### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK OBERHEIM AND BRENDA OBERHEIM, PARENTS OF G.O. E.O., MINOR CHILDREN, *et al.*, | No. 4:21-CV-01566 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| CHRISTINA BASON, SUPERINTENDENT; DAVID SHIMMEL, PRESIDENT OF THE MONTOURSVILLE SCHOOL BOARD; MONTOURSVILLE SCHOOL BOARD; and ALISON BEAM, ACTING SECRETARY OF THE PENNSYLVANIA SECRETARY OF HEALTH, | |
| Defendants. | |

### MEMORANDUM OPINION

#### SEPTEMBER 30, 2021

No one except perhaps a bank robber *likes* to wear a mask—and even then with reluctance, but as a concession to professional attire. But the Constitution does not shield us from all things we dislike. Here, parents of schoolchildren in Montoursville, Pennsylvania filed suit against the local school district, challenging the constitutionality of the district's policy requiring students to wear masks while on school premises and buses. Despite the ongoing global COVID-19 pandemic, these parents ask the Court to immediately suspend the school district's mask mandate pending the resolution of their case. The Court declines to do so, as the parents failed

to establish that such an extraordinary remedy is warranted in this circumstance. The Constitution does not guarantee students a right to attend school without wearing a mask and being required to do so neither inflicts irreparable harm nor in any way violates students' right to freely associate and assemble with others. For these reasons, as explained in further detail below, the parents' Motion for Preliminary and Permanent Injunction is denied.

## I.    BACKGROUND

Throughout the summer of 2021, the Montoursville Area School District (the "School District" or "District") Board of Directors (the "School Board") held multiple meetings to discuss school policies for the upcoming academic year.[1] These meetings included discussions on whether students would be required to wear masks while on school premises during the 2021–2022 school year.[2]

On July 19, 2021, the School Board held a meeting on the School District's "Health and Safety Plan," a policy that "addresses how [the School District] will maintain the health and safety of students, educators, and other staff, and which will serve as local guidelines for all instructional and non-instructional school activities."[3] At the meeting, the School Board solicited input from parents and then considered, and voted on, proposed revisions to the Health and Safety Plan.[4] Relevant here, the

---

[1]  Doc. 11 ¶ 48.
[2]  *Id.*
[3]  Doc. 11, Ex. D at 1.
[4]  Doc. 11 ¶ 49.

School Board approved a proposal to include in the Health and Safety Plan a "mask optional policy," which provided that the School "will maintain mask optional status for the 2021–2022 school year."[5] The School Board ultimately approved the Health and Safety Plan by a vote of 8 to 0.[6]

The President of the School Board, Defendant David Schimmel, signed and released a copy of the Health and Safety Plan on June 4, 2021. That Plan includes the following health policy statement:

> The district has and will continue to review any recommendations and follow any laws or mandates we receive from the Pennsylvania Department of Education or Pennsylvania Department of Health as well as consider the unique needs of our community and district.[7]

The Plaintiffs allege that "this language is incorrect," as it "clearly contradicts" the section of the Health on Safety Plan that addresses "[c]oordination with state and local health officials."[8] That section instead provides that "[t]he district will follow Pennsylvania laws and consider recommendations made by the Pennsylvania Department of Education and the Department of Health."[9]

On July 19, 2021, the Superintendent of the School District, Defendant Christina Bason, sent "a district-wide email to parents concerning the Health and Safety and Education Plans for the 2021–2022 School Year."[10] In the email, Bason

---

[5]   Doc. 11, Ex. D at 4.
[6]   Doc. 11 ¶ 49.
[7]   Doc. 11, Ex. D at 4.
[8]   Doc. 16 at 4.
[9]   Doc. 11, Ex. D at 5.
[10]  Doc. 11 ¶ 51.

included a link to the Health and Safety Plan, which contained the "mask optional

policy" and health policy coordination statement described above.[11]

But by the end of the following month, the public health landscape concerning

COVID-19 had changed dramatically. Between July and August 2021, Pennsylvania's

COVID-19 case count increased "from less than 300 cases per day to more than 3,000

cases per day."[12] In total, "there were 1,300,368 cases and 28,235 deaths in this

Commonwealth caused by COVID-19."[13] Particularly troubling for Pennsylvania

schools, the number of COVID-19 cases "among school-aged children . . . increased

by 11,000 in a one-month period and by more than 79,000 since the beginning of the

year."[14] This surge in new cases was attributable, at least in part, to a highly

transmissible, "more infectious" strand of the virus: the Delta variant.[15]

In response to these developments, on August 31, 2021, the Acting Secretary of

Pennsylvania Department of Health, Defendant Alison Beam, issued the following

mandate to school entities, including public Pre-K–12 grade schools: "Each teacher,

child/student, staff, or visitor working, attending, or visiting a School Entity shall

wear a face covering indoors, regardless of vaccination status, except as set forth in

Section 3."[16] After receiving this directive from the Department of Health, Bason

announced a new policy for the School District requiring all students and teachers to

---

[11] *Id*. ¶¶ 51–52.
[12] Doc. 19 at 2.
[13] *Id*.
[14] *Id*. at 3.
[15] *Id*.
[16] Doc. 11 ¶ 61.

wear masks on school premises and buses (the "Montoursville Mask Mandate" or "Mask Mandate").[17] The Plaintiffs allege that prior to issuing the Mask Mandate, Bason consulted only with Shimmel; she did not solicit input from other members of the School Board, and the School Board did not hold a regular or special meeting on the Department of Health's masking directive.[18]

On September 13, 2021, the Plaintiffs filed their original Complaint against Bason, Shimmel, and the School Board, arguing that the Montoursville Mask Mandate violated their children's constitutional rights under the First, Fifth, and Fourteenth Amendments.[19] The Plaintiffs requested a temporary restraining order and preliminary injunction to stop the School Board from enforcing the Mask Mandate.[20] The Court convened a telephonic hearing with the parties on September 17, 2021 and issued a scheduling order later that day.[21]

On September 20, 2021, the Plaintiffs filed a formal Motion for Preliminary and Permanent Injunction, seeking a temporary restraining order "on an emergency basis," a "[p]reliminary [i]njunction to enjoin the Superintendent or members of the [School] Board from enforcing the [Montoursville Mask Mandate]," and, ultimately, a "permanent injunction."[22] The Plaintiffs also filed an Amended Complaint, naming

---

17  *Id*. ¶ 64.
18  *Id*. ¶ 65–67.
19  Doc. 1.
20  *Id*.
21  *See* Doc. 8.
22  Doc. 10.

Secretary Beam as an additional defendant and changing the caption.[23] Although the Amended Complaint names Secretary Beam as a defendant, the Plaintiffs clarified that "it is not [their] intent to argue the legality of Secretary Beam's Order"; instead, they assert that the Mask Mandate is "not required by Secretary Beam's Order" and unconstitutional.[24] As such, the motion for preliminary relief concerns only the Montoursville Mask Mandate.[25]

The parties fully briefed the Plaintiff's motion for preliminary relief,[26] and the Court held a hearing on the matter on September 24, 2021.[27] As such, the motion is now ripe for disposition.

## II.   LAW

Federal Rule of Civil Procedure 65 governs the granting of injunctive relief such as temporary restraining orders and preliminary injunctions. By design, this relief is extraordinary in nature and available only in limited circumstances.[28] The United States Court of Appeals for the Third Circuit has outlined four factors that a court ruling on a request for injunctive relief must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary

---

[23]   Doc. 11.
[24]   Doc. 16 at 14.
[25]   *See* Doc. 10.
[26]   *See* Doc. 16; Doc. 19; Doc. 21.
[27]   *See* Doc. 24.
[28]   *See AT&T v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994), *cert. denied*, 514 U.S. 1103 (1995).

relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.[29] These same factors apply with equal force to a motion for a temporary restraining order.[30]

In *Reilly v. City of Harrisburg*, the Third Circuit clarified the burden on a party seeking issuance of a preliminary injunction.[31] The Third Circuit specified that a party seeking a preliminary injunction must first demonstrate the following: (1) "it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not)," and (2) "it is more likely than not to suffer irreparable harm in the absence of preliminary relief."[32] The Third Circuit continued that "[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."[33]

## III.   ANALYSIS

### A.   Likelihood of Success on the Merits

In assessing the Plaintiffs' request for preliminary relief, the Court must first determine whether they have shown a reasonable probability of success on the merits—the first of two "gateway factors."[34] This requires an individualized

---

[29]   *Talbert v. Corizon Medical*, 605 Fed. Appx. 86, 87 (3d Cir. 2015).
[30]   *Cerro Fabricated Products LLC v. Solanick*, 300 F. Supp. 3d 632, 648 n.5 (M.D. Pa. 2018) (Mariani, J.).
[31]   858 F.3d 173 (3d Cir. 2017).
[32]   *Id*. at 179.
[33]   *Id*.
[34]   *Id*.

evaluation of each of the Plaintiffs' three claims: (1) procedural due process; (2) substantive due process; and (3) right to free association. For the reasons provided below, the Plaintiffs have not met their burden.

### 1.    Procedural Due Process

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."[35] To make a claim for violation of procedural due process, a plaintiff must first establish that the "interest" in question "is within the Fourteenth Amendment's protection of liberty and property."[36] If a court determines that "protected interests are implicated, [it] then must decide what procedures constitute 'due process of law.'"[37]

### a.    "Liberty" Interest

The Supreme Court of the United States has held that "[i]n a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed"; however, "the range of interests protected by procedural due process is not infinite."[38] As such, "before conferring constitutional status upon a previously unrecognized "liberty," the Supreme Court demands "a careful description of the asserted fundamental liberty interest as well as a demonstration that the interest is objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of

---

[35]  U.S. Cons. amend. XIV § 1.
[36]  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972).
[37]  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).
[38]  *Board of Regents*, 408 U.S. at 570–72.

ordered liberty, such that neither liberty nor justice would exist if [it was] sacrificed."[39]

At the September 24, 2021 hearing, the Plaintiffs described their liberty interest as the "right to raise [their] children as [they] see fit."[40] Put another way, the Plaintiffs believe that they have a right to determine whether, in the midst of a pandemic, their children wear masks in school. They are wrong.

Although "[t]he right of parents to raise their children without undue state interference is well established,"[41] this right is "neither absolute nor unqualified."[42] The Third Circuit has recognized that "in certain circumstances the parental right to control the upbringing of a child must give way to a school's ability to control curriculum and the school environment."[43] For example, courts have held that the following school policies did not violate parents' rights to direct the upbringing of their children: restrictions on part-time attendance,[44] mandatory student participation in a community service program,[45] and mandatory student attendance at a sexually explicit AIDS awareness assembly.[46]

---

[39]  *Kerry v. Din*, 576 U.S. 86, 93 (2015).
[40]  Doc. 24.
[41]  *Gruenke v. Seip*, 225 F.3d 290, 303 (3d Cir. 2000).
[42]  *C.N. v. Ridgewood Board of Education*, 430 F.3d 159, 182 (3d Cir. 2005).
[43]  *Id*.
[44]  *Swanson v. Guthrie Independent School Dist.*, 135 F.3d 694 (10th Cir. 1998).
[45]  *Herndon v. Chapel Hill-Carrboro City Board of Education*, 89 F.3d 174 (4th Cir. 1996).
[46]  *Brown v. Hot, Sexy and Safer Productions., Inc.*, 68 F.3d 525, 532–34 (1st Cir. 1995), *abrogated on other grounds by Martinez v. Cui*, 608 F.3d 54, 63 (1st Cir. 2010).

Here, the Plaintiffs have not identified, and the Court is not aware of, any cases standing for the proposition that school masking requirements violate parents' right to raise their children.[47] This is for good reason. Although parents possess the right to raise their children as they see fit, they are not entitled to undermine the Government's public health efforts during a global pandemic by refusing to have their children comply with a school masking requirement.

### b.    "Property" Interest

During the September 24, 2021 hearing, counsel for the Plaintiffs specifically stated that his clients were not asserting a property interest; however, at various times during the hearing, he invoked the students' "right to public education," which the Supreme Court has recognized as a property interest protected by the Due Process Clause.[48] Regardless, the Plaintiffs have failed to demonstrate an infringement of their children's entitlement to a public education because the Montoursville Mask Mandate does not prevent kids from attending public school.

---

[47]   The Plaintiffs point to a recent decision from the Western District of Pennsylvania: *B.P. by and Through L.P. v. North Allegheny School Dist.*, 2021 WL 3782099 (W.D. Pa. Aug. 23, 2021). There, the court held that the plaintiffs "are likely to prevail on the merits of their procedural due process claim" where a school district's vote, "on whether to eliminate the universal masking requirement that had gone into effect upon the authority of Superintendent Dr. Friez, occurred without any advance notice or sufficient hearing." *Id*. at *1 (internal quotation marks omitted). However, the court's ruling is devoid of any analysis on the alleged due process violation that the court believed occurred. As Defendants Bason, Shimmel, and the School Board correctly note, that court made "no finding [that] a requirement of masking in school affects any property or liberty interest—a fundamental element of the due process claims." Doc. 21 at 23. Absent such explication, this Court finds that *B.P. by and Through L.P.* has no precedential value or effect.

[48]   *See Goss v. Lopez*, 419 U.S. 565, 574 (1975).

The Third Circuit has explained that for purposes of procedural due process, "to have a property interest in a benefit, a person must clearly have more than an abstract need or desire and more than a unilateral expectation of receiving a benefit."[49] The claimant must instead "have a legitimate claim of an 'entitlement' . . . created by a state statute or regulation arising from government policy or a mutually explicit understanding."[50]

The Supreme Court has long held that pursuant to state law establishing a public school system and requiring children to attend, students possess a "legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause."[51] However, a student's entitlement to a public education is not without limits. The property right to a public education does not allow students to dictate the curriculum they receive[52] or the classes they take.[53] So long as administrative policies and actions do not "exclude [a] student from class," they do not implicate the property interest in public education.[54] Indeed, it is well-settled that

---

[49]  *Culinary Service of Delaware Valley, Inc. v. Borough of Yardley*, 385 Fed. Appx. 135, 141 (3d Cir. 2010).

[50]  *Id.*

[51]  *Goss*, 419 U.S. at 574.

[52]  *See Arundar v. DeKalb School Dist.*, 620 F.2d 493, 494–95 (5th Cir. 1980) ("[P]laintiff's wishes with respect to a particular curriculum choice, no matter how great that desire might be, do not, under *Goss*, amount to a 'property' interest for Fourteenth Amendment purposes.").

[53]  *See Seamons v. Snow*, 84 F.3d 1226, 1234–35 (10th Cir. 1996) ("With regard to the specific components of education which [the plaintiff] claims were lost (*e.g.*, the right to participate in sports, to take advanced placement classes, and to attend a particular school), we do not believe that [he] has a constitutional right to those particular incidents of education.").

[54]  *Wise v. Pea Ridge School Dist.*, 855 F.2d 560, 563 n.3 (8th Cir. 1988) ("In-school suspension does not exclude the student from school and consequently a student's property interest in a public education is not implicated."); *see also Laney v. Farley*, 501 F.3d 577, 582–83 (6th Cir.

requiring immunization as a precondition to attending school does not constitute an unlawful deprivation of students' legitimate entitlement to public education.[55]

Here, the Montoursville Mask Mandate does not in any way exclude students from school. All students are permitted to attend school, go to class, and perform all other functions associated with receiving their education. They must, however, wear masks while doing so. Just as a school district's immunization requirement does not unlawfully deprive its students of their legitimate entitlement to public education, neither does a mask mandate.[56]

### c.   Due Process of Law

Because the Plaintiffs failed to identify any protected liberty or property interests at issue, they cannot establish that the Montoursville Mask Mandate infringes upon either their or their children's Fourteenth Amendment rights. That ends the procedural due process analysis. However, even if the Court were to find that the Montoursville Mask Mandate implicates a protected interest, the procedural due process claim would nevertheless fail because the Plaintiffs have not demonstrated that they were deprived due process.

---

2007) (holding that "one-day in-school suspension does not implicate a property interest in public education").

[55]   *See Zucht v. King*, 260 U.S. 174, 175–76 (1922); *see also W.D. v. Rockland County*, 2021 WL 707065, at *18 (S.D.N.Y. Feb. 22, 2021) (dismissing claim that county ordinance excluding non-vaccinated students from school did not violate non-vaccinated students' right to procedural due process because plaintiffs have not "stated a viable property interest in sending their children to school without vaccination").

[56]   *See P.M. v. Mayfield City School District*, 2021 WL 4148719, at *8 (N.D. Ohio Sept. 13, 2021) (finding that the plaintiff "has not shown how the [school's] mask mandate deprives her daughter of her property interest in school attendance").

Here, the Plaintiffs are not challenging the "legality of Secretary Beam's Order" directing the use of face coverings in school entities.[57] As such, for purposes of this motion, the Court accepts as true the Commonwealth's position that Secretary Beam's order "was lawfully entered."[58] The Court must therefore determine only whether the School District was obligated to follow this presumptively lawful order, and, if yes, whether doing so without first holding an open School Board meeting on the matter deprived the Plaintiffs of their constitutionally-guaranteed right to be heard.[59]

First, the Court agrees with the Commonwealth that "[o]nce [Secretary Beam's] Order was issued, the School Board was mandated to follow it."[60] The Disease Prevention and Control Law provides that the Pennsylvania Department of Health "shall be responsible for the prevention and control of communicable and non-communicable disease in any municipality which is not served by a local board or department of health, *including disease control in public and private schools*."[61] Importantly, the Disease Prevention and Control Law also makes clear that the

---

[57] Doc. 16 at 14.

[58] Doc. 19 at 8–14.

[59] Secretary Beam asks the Court to abstain from deciding this matter until the Pennsylvania Commonwealth Court resolves the issue of whether the Secretary had the authority, under Pennsylvania law, to issue the August 31, 2021 order. *See* Doc. 19 at 5 (citing *Corman, et al. v. Acting Secretary of the Pennsylvania Department of Health*, No. 294 M.D. 2021; *J.W., et al. v. Acting Secretary of the Pennsylvania Department of Health Alison Beam*, No. 297 M.D. 2021). However, as noted, the Plaintiffs are not challenging the legality of Secretary Beam's order, and, regardless, the Court's ruling on the Plaintiffs' request for preliminary relief is not contingent on that issue. As such, the Court declines to abstain at this juncture.

[60] Doc 19 at 14.

[61] 35. P.S. § 531.3(b) (emphasis added).

Department of Health "sets the floor for any disease control measures"[62]—

municipalities (even those with a local board or department of health) are permitted to

enact disease prevention and control measures that are *more* stringent than those

adopted by the Department of Health, but not *less*.[63]

The Plaintiffs argue that the School Board—not the Department of Health—has

the sole authority to make decisions about the appropriate disease control measures

for schools within the District. In support, Plaintiffs direct the Court to the

Pennsylvania School Code, which states the following:

> The board of school directors in any school district may adopt and
> enforce such reasonable rules and regulations as it may deem necessary
> and proper, regarding the management of its school affairs and the
> conduct and deportment of all superintendents, teachers, and other
> appointees or employ[ees] during the time they are engaged in their
> duties to the district, as well as regarding the conduct and deportment of
> all pupils attending the public schools in the district.[64]

However, neither this section of the School Code nor any other section cited by the

Plaintiffs allow school boards to ignore applicable disease prevention and control

mandates promulgated by the Department of Health.[65] Because the General Assembly

specifically delegated the responsibility for "disease control in public and private

---

[62]   Doc. 19 at 12.
[63]   35. P.S. § 521.16 ("Municipalities which have boards or departments of health or county
       departments of health may enact ordinances or issue rules and regulations relating to disease
       prevention and control, which are not less strict that the provisions of this act or the rules and
       regulations issued thereunder by the [Health Advisory] board.").
[64]   24 P.S. § 5-510.
[65]   Doc. 16 at 9–10 (citing 24 P.S. §§ 2-211, 3-301, 4-407).

schools" to the Department of Health, [66] the Court finds that the School District was required to follow Secretary Beam's order.

Second, given the compulsory nature of Secretary Beam's order, the Plaintiffs were not unconstitutionally deprived of due process when Superintendent Bason issued the Montoursville Mask Mandate. As Bason, Schimmel, and the School District assert, they "have done nothing except comply with [Secretary Beam's] Order."[67] The Plaintiffs have not cited, and the Court is not aware of, any legal authority showing that where there is a valid, generally applicable state order, due process requires municipal entities to hold open meetings to consider whether to follow the law.

Because the Plaintiffs failed to identify a protected liberty or property interest abridged by the Montoursville Mask Mandate, and likewise failed to demonstrate that any purported deprivation occurred without due process, the Plaintiffs have not established a reasonable probability that their procedural due process claim will succeed.

## 2.    Substantive Due Process

In addition to the procedural protections, the Due Process Clause of the Fourteenth Amendment has a substantive component, which "limits what government may do regardless of the fairness of procedures that it employs."[68] Substantive due

---

[66]   35 P.S. § 521.3(b).
[67]   Doc. 21 at 17.
[68]   *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000).

process rights are violated by "the exercise of power without any reasonable justification in service of a legitimate government objective."[69]

To assess a substantive due process claim, the Court must "define the exact contours of the underlying right said to have been violated."[70] The Supreme Court has "regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."[71] If the underlying right allegedly infringed qualifies as a "fundamental right," courts apply strict scrutiny—that is, the government action is permissible only if "the infringement is narrowly tailored to serve a compelling state interest.[72] Conversely, infringements on other rights or liberties, though still constitutionally scrutinized, need only satisfy the less-onerous "rational basis review"—that is, the government action will be upheld so long as it "rationally furthers some legitimate, articulated state purpose."[73]

Here, the Montoursville Mask Mandate does not infringe a fundamental right. As noted, although parents possess a fundamental right to raise their children without undue state interference, this right does not extend to the Plaintiffs' decision to disregard the School District's policy by having their children attend school without

---

[69]   *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

[70]   *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002) (internal quotation marks omitted).

[71]   *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal citations and quotation marks omitted).

[72]   *Id.* at 721 (citation omitted).

[73]   *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).

wearing masks. Likewise, their children do not have a fundamental right to attend school without masks on. Although the Supreme Court has held that the right to a public education is a property interest protected by the Due Process Clause for purposes of procedural due process, it expressly declined to "accept[] the proposition that education is a 'fundamental right,' . . . which should trigger strict scrutiny when government interferes with an individual's access to it."[74] It is wholly unsurprising, then, that other courts that considered the constitutionality of similar school-specific mask mandates concluded that the mandates did not implicate a fundamental right.[75]

Because students do not possess a fundamental right to attend school without wearing a mask or other face covering, the Plaintiffs' substantive due process claim is governed by the rational basis test. The Montoursville Mask Mandate comfortably clears this low bar.

It is beyond dispute that schools have "a legitimate interest in promoting the health and safety of its students,"[76] which extends to efforts "to reduce the spread of COVID-19 among students and school employees."[77] Moreover, "guidance from . . . public health authorities," such as the Pennsylvania Department of Health, "shows

---

[74] *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 458 (1988).

[75] *See, e.g., Klaasen v. Trustees of Indiana University*, 2021 WL 3073926 (N.D. Ind. July 18, 2021) (holding that students' substantive due process claim based on a school mask mandate was unlikely to succeed because "there is no fundamental constitutional right to not wear a mask"); *W.S. by Sonderman v. Ragsdale*, 2021 WL 2024687, at *2 (N.D. Ga. May 12, 2021) ("Rational basis is the proper standard of review for the mask mandate" because it "neither discriminates against a protected class nor infringes a fundamental right.").

[76] *Klaasen*, 2021 WL 3073926, at *40.

[77] *Ragsdale*, 2021 WL 2024687 at *2.

there is a rational connection between the mask mandate and its intended goal of slowing the spread of the virus."[78] Although the Plaintiffs contest the efficacy of masks in preventing the spread of COVID-19,[79] "such a dispute is left to the resolution of the policymakers, particularly when studies have shown universal mask wearing resulted in decreases in COVID rates" as compared with "populations that forewent masks."[80]

Given that the Montoursville Mask Mandate followed an express decree issued by Secretary Beam—requiring "[e]ach teacher, child/student, staff, or visitor working, attending, or visiting a School Entity [to] wear a face covering indoors, regardless of vaccination status"[81]—the Court finds that the Mask Mandate is rationally related to the legitimate interest in reducing the spread of COVID-19. The Mask Mandate thus

---

[78]  *Id*. (noting that the school district presented evidence that it "implemented the mandate based on guidance from the Centers for Disease Control and Prevention, the Georgia Department of Public Health, and Cobb and Douglas Public Health").

[79]  The Plaintiffs cherry-pick quotes from select public health officials to advance the wholly unsupported claim that "the data shows that masks do not work to prevent the spread of COVID-19 period, much less in the healthiest section of our population, the children." Doc. 11 ¶ 59. As Defendants Bason, Shimmel, and the School District correctly note, the Centers for Disease Control and Prevention report that the Plaintiffs' cite provides that "[m]andating masks was associated with a decrease in daily COVID-19 case and death growth rates within 20 days of implementation." Doc. 11, Ex. A at 1. Likewise, an honest, complete review of the interview with the Director for the National Institutes of Health ("NIH") reveals that the NIH strongly supports requiring students to wear masks in school as a COVID-19 prevention measure. *See* Doc. 11, Ex. E.
The dubious nature of the Plaintiffs' scientific assertions is compounded by their reference to the "use [of] Hydroxychloroquine or Ivermectin in the treatment of COVID-19," which they argue would have increased "the percentage of children that recover[ed] from . . . COVID infection[s.]" Doc. 11 ¶ 80. This baseless "scientific" claim may have some currency on cable television or social media; it does not, however, constitute the type of "sound evidence" demanded by federal courts. *Klaasen*, 2021 WL 3073926 at *40.

[80]  *Klaasen*, 2021 WL 3073926 at *40.

[81]  Doc. 11 ¶ 61.

satisfies rational basis review. For this reason, the Plaintiffs have not established a reasonable probability of succeeding on their substantive due process claim.

### 3. Freedom of Association

For their final claim, the Plaintiffs assert that the Montoursville Mask Mandate "deprived [students] the right of free association guaranteed by the First Amendment" because they "can no longer associate safely, or potentially at all."[82] The parents are not the first to advance this claim, but as other courts have noted, it is certainly "a head scratcher."[83]

The Supreme Court has observed that although "the First Amendment does not in terms protect a 'right of association,'" it does "embrace[] such a right in certain circumstances."[84] Specifically, "[t]wo sometimes overlapping types of association have been recognized: associations founded on intimate human relationships in which freedom of association is protected as a fundamental element of liberty, and associations formed for the purpose of engaging in activities by the first amendment, such as the exercise of speech, assembly, and religion."[85]

Here, the Plaintiffs have not explicitly alleged that the Montoursville Mask Mandate prevents or otherwise impedes their children's ability to engage in either type of protected association. The Amended Complaint contains the conclusory

---

[82] *Id.* ¶ 101.

[83] *Zinman v. Nova Southeastern University Inc., et al.*, 2021 WL 4025722, at *15 (S.D. Fla. Aug. 30, 2021); *see also Oakes v. Collier County*, 515 F. Supp. 3d 1202, 1215 (M.D. Fla. 2021).

[84] *City of Dallas v. Stanglin*, 490 U.S. 19, 23–24 (1989).

[85] *Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir. 1988) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984).

allegation that due to the Mask Mandate, students "can no longer associate safely, or potentially at all,"[86] but the Plaintiffs do not allege how requiring students to wear masks at school impinges on their ability to "enter into and maintain certain intimate human relationships" or "associate for the purpose of engaging in those activities protected by the First Amendment."[87]

Moreover, even if the Plaintiffs had properly alleged that the Mask Mandate impinges on their children's protected associational rights, they fail to allege that any such infringement is sufficiently "significant" to run afoul of the First Amendment. The Supreme Court has held that "consonant with the First Amendment, government may engage in some conduct that incidentally inhibits protected forms of association."[88] As such, where government actions "make it more difficult for individuals to exercise their freedom of association, this consequence does not, without more, result in a violation of the First Amendment."[89] "To be cognizable, the interference with association rights must be 'direct and substantial' or 'significant.'"[90]

Requiring students to wear masks while at school or on a school bus does not prevent them from assembling or associating with others. Indeed, other courts that have addressed similar claims have held that "mask mandates seem to have, at most, a

---

[86]   Doc. 11 ¶ 101.
[87]   *Roberts*, 468 U.S. at 617–18.
[88]   *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996) (citing *Lyng v. UAW*, 485 U.S. 360, 366 (1988)).
[89]   *Id*.
[90]   *Id*. (quoting *Lyng*, 485 U.S. at 367 & n.5).

minimal impact—and certainly not the alleged 'substantial impact'—on Plaintiff's rights to assemble and associate."[91]

Because the Montoursville Mask Mandate does not place a significant burden on students right to freely associate, the Plaintiffs' First Amendment claim is also unlikely to succeed.

## B.   Irreparable Harm

To obtain a preliminary injunction, a party must also show that "it is more likely than not to suffer irreparable harm in the absence of preliminary relief."[92] The Third Circuit has explained that "[t]he requisite feared injury or harm must be irreparable—not merely serious or substantial."[93] Moreover, the moving party must make "a clear showing of immediate irreparable injury, or a presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury."[94] Lastly, the harm "must be of a peculiar nature, so that the compensation in money cannot atone for it."[95]

Here, for all three claims, the Plaintiffs repeat the same allegation concerning the purported harm their children face:

---

[91]   *Zinman*, 2021 WL 4025722 at *15; *see also Denis v. Ige*, 2021 WL 1911884, at *11 (D. Haw. May 12, 2021) (holding that mask mandates "allow anyone to freely assemble and associate as long as they are socially distanced or wearing a mask," and as such, they "do not prohibit assemblies, but instead place a minor restriction on the way they occur"); *Oakes v. Collier County*, 515 F. Supp. 3d 1202, 1215 (M.D. Fla. 2021) (same).

[92]   *Reilly*, 858 F.3d at 179.

[93]   *ECRI v. McGraw-Hill*, 809 F.2d 223, 226 (3d Cir. 1987) (internal quotation marks omitted).

[94]   *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) (internal quotation marks omitted).

[95]   *ECRI*, 809 F.2d at 226.

Plaintiffs were harmed and continue to be harmed by [the Mask Mandate], including by suffering irreparable harm including exposure to present and existential threats to health and safety, threat of retribution and bullying, increased risk of serious bodily injury and/or death.[96]

These alleged harms have no basis in fact. The Complaint does not contain any allegations explaining how wearing a mask or other face covering creates a "present and existential threat[] to health and safety," or, more dramatically, an "increased risk of serious bodily injury and/or death." As other courts have noted, wearing masks is not "indicative of irreparable harm, but consistent with CDC guidelines."[97] The Complaint similarly contains no specific allegations of past or threatened "retribution and bullying"—these purported harms appear purely hypothetical. This "possibility of a remote future injury" does not constitute irreparable harm.[98]

## C.   Harm to Non-Moving Party and the Public Interest

Because the Plaintiffs failed to satisfy either of the two "gateway factors," the Court need not consider the remaining two factors—that is, the harm to the opposing party and the best interest of the public.[99] Regardless, these factors—which "merge when the Government is the opposing party"[100]—do not support granting preliminary relief.

---

[96]   Doc. 11 ¶¶ 92, 98, 104.

[97]   *Klaason*, 2021 WL 3073926 at *42.

[98]   *Acierno*, 40 F.3d at 655; *see also Ragsdale*, 2021 WL 2024687 at *2 (finding that plaintiffs, suing to prevent the implementation of a mask mandate, "have not demonstrated the threat of a real and immediate injury needed to support the extraordinary remedy of a TRO.").

[99]   *Reilly*, 858 F.3d at 179.

[100]   *Nken v. Holder*, 556 U.S. 418, 435 (2009). Although the Plaintiffs name Bason and Schimmel as defendants in both their "individual and representative capacit[ies], Doc. 11 ¶¶ 25, 28, the nature of the preliminary relief requested (i.e., stopping the school district from enforcing the

The School District has "a right to rely on the recommendations given by reputable public health authorities . . . when deciding how to combat COVID-19, which has caused the worst public health crisis in a century."[101] Here, the Pennsylvania Department of Health did not merely recommend that students wear masks while in school, it explicitly ordered school districts to require masks in schools. The Court finds it is not in the best interest of the public to interfere with that order.

## IV.   CONCLUSION

The Plaintiffs ask the Court to take the extraordinary step of suspending the Montoursville Mask Mandate, thus permitting students to attend school without masks in direct contravention of the Pennsylvania Department of Health's masking order. But to receive such a drastic remedy, the Plaintiffs must clear several significant legal hurdles. They failed to do so. Because the Mask Mandate does not infringe on the constitutionally guaranteed rights of the students or their parents, the Plaintiffs' claims are unlikely to succeed. Moreover, the Plaintiffs failed to demonstrate how the Mask Mandate, if permitted to stay in effect, would result in irreparable harm to the

---

mask mandate) prompts the Court to emphasize the expected harm to the Government defendants: the Montoursville School Board, Superintendent Bason, President Schimmel, and Secretary Beam.

[101] *Ragsdale*, 2021 WL 2024687 at *3.

students. Therefore, the Plaintiffs' Motion for Preliminary and Permanent Injunction is denied.[102]

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[102] Doc. 10. As noted, the Plaintiffs' Motion seeks a temporary restraining order "on an emergency basis," a preliminary injunction, and, ultimately, a permanent injunction. In denying the Plaintiffs' Motion, the Court rejects all three forms of requested injunctive relief.